**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISON**

| | | |
|---|---|---|
| KIASI BATES, | ) | **COMPLAINT** |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 2:23-cv-556 |
| AD ASTRA RECOVERY | ) | |
| SERVICES, INC. | ) | |
| | ) | |
| & | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MIDLAND FUNDING, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| CREDIT SYSTEMS | ) | |
| INTERNATIONAL, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| TRANS UNION, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT AND JURY DEMAND**

COMES NOW, Plaintiff Kiasi Bates, by and through the undersigned counsel, and for her

Complaint against Defendants Ad Astra Recovery Services, Inc. ("Ad Astra"), Midland Funding, LLC

("MF"), Credit Systems International, Inc. ("CSII"), Equifax Information Services, LLC ("Equifax"),

Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("TU") (and together

collectively, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. §

1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et

seq. ("FCRA"), states as follows:

## JURISDICTION

1.          This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

2.          Venue is proper because Plaintiff resides here, the acts and transactions occurred here,

and Ad Astra, MF, CSII, Equifax, Experian, and TU transact business here.

3.          Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred.

4.          Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to

personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside

in any district in that State within which its contacts would be sufficient to subject it to personal

jurisdiction if that district were a separate state.

5.          Plaintiff resides in the city of Pittsburg a part of Camp County, Texas 75686.

6.          The acts that occurred giving rise to this complaint occurred while Plaintiff was in the

city of Ad Astra, a part of Camp County, Texas 75140, making the Marshall Division a proper venue

under 28 U.S. Code § 1391(b)(2).

7.          Defendant Ad Astra, a Kansas corporation headquartered in Wichita, KS, practices as

a debt collector throughout the country, including Texas.

8.          Defendant Ad Astra attempts to collect alleged debts throughout the state of Texas,

including in Pittsburg city and Camp County.

9.          Defendant Ad Astra has actual knowledge of where Plaintiff resided, and by

attempting to collect from Plaintiff, purposefully availed itself to the jurisdiction in which Plaintiff

resided.

10.    Defendant Ad Astra has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Pittsburg city and Camp County and Defendant attempts to collect alleged debts throughout the state of Texas.

11.    Defendant Ad Astra knowingly attempted to collect on a debt allegedly incurred in Pittsburg, Texas and thus has sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(1).

12.    Defendant Midland Funding, a California corporation headquartered in San Diego, CA, practices as a debt collector throughout the country, including Texas.

13.    Defendant MF attempts to collect alleged debts throughout the state of Texas, including in Pittsburg city and Camp County.

14.    Defendant MF has actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed itself to the jurisdiction in which Plaintiff resided.

15.    Defendant MF has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Pittsburg city and Camp County and Defendant attempts to collect alleged debts throughout the state of Texas.

16.    Defendant MF knowingly attempted to collect on a debt allegedly incurred in Pittsburg, Texas and thus has sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(1).

17.    Defendant CSII, a Texas corporation headquartered in Fort Worth, TX, practices as a debt collector throughout the country, including Texas.

18.    Defendant CSII attempts to collect alleged debts throughout the state of Texas, including in Pittsburg city and Camp County.

19.    Defendant CSII has actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed itself to the jurisdiction in which Plaintiff resided.

20.     Defendant CSII has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Pittsburg city and Camp County and Defendant attempts to collect alleged debts throughout the state of Texas.

21.      Defendant CSII knowingly attempted to collect on a debt allegedly incurred in Round Rock, Texas and thus has sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(1).

22.     Defendant Equifax, a Georgia corporation headquartered in Atlanta, GA, practices as a debt collector throughout the country, including Texas.

23.     Defendant Equifax serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Pittsburg city and Camp County.

24.     Defendant Equifax has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant Equifax purposefully availed itself to the jurisdiction in which Plaintiff resided.

25.     Defendant Equifax has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Pittsburg city and Camp County and Defendant attempts to collect alleged debts throughout the state of Texas.

26.      Defendant Equifax knowingly reported information regarding a Plaintiff domiciled in Pittsburg, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

27.     Defendant Experian, an Ohio corporation headquartered in Costa Mesa, CA, practices as a debt collector throughout the country, including Texas.

28.     Defendant Experian serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Pittsburg city and Camp County.

29.    Defendant Experian has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant Experian purposefully availed itself to the jurisdiction in which Plaintiff resided.

30.    Defendant Experian has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Pittsburg city and Camp County and Defendant attempts to collect alleged debts throughout the state of Texas.

31.    Defendant Experian knowingly reported information regarding a Plaintiff domiciled in Pittsburg, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

32.    Defendant TU, a Delaware corporation headquartered in Chicago, IL, practices as a debt collector throughout the country, including Texas.

33.    Defendant TU serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Pittsburg city and Camp County.

34.    Defendant TU has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant TU purposefully availed itself to the jurisdiction in which Plaintiff resided.

35.    Defendant TU has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Pittsburg city and Camp County and Defendant attempts to collect alleged debts throughout the state of Texas.

36.    Defendant TU knowingly reported information regarding a Plaintiff domiciled in Pittsburg, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

## STANDING

37.    Plaintiff has a congressionally defined right to receive all communications from a debt

5

collector free from any misrepresentations and false threats.

38.     Ad Astra, MF and CSII's collection activities violated the FDCPA.

39.     Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

40.     Plaintiff has thus suffered an injury as a result of Defendants conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

41.     "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

42.     "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

**PARTIES**

43.     Plaintiff, Kiasi Bates (hereafter "Plaintiff"), is a natural person currently residing in Camp County, in the state of Texas.

44.     Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

45.     Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

46.     Defendant Ad Astra is a Kansas corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 9527 N Ridge Rd Wichita, KS 67205.

47.     Defendant MF is a California corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 350 Camino De La Reina, Ste 300 San Diego, CA 92108.

48.     Defendant CSII is a Texas corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 1277 Country Club Lane, Fort Worth, TX 76112.

49.     Ad Astra, MF and CSII are engaged in the business of collection agencies, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

50.     Ad Astra, MF and CSII regularly collect or attempt to collect defaulted consumer debts due or asserted to be due another, and are "debt collectors" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

51.     Defendant Equifax is a Georgia corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

52.     Defendant Experian is a California corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

53.     Defendant TU is a Delaware corporation with its principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

54.     Defendants Ad Astra, MF and CSII are "furnishers of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

55.     Equifax, Experian, and TU are all a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). Equifax, Experian, and TU regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

    a. Public record information;

    b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

56.     Plaintiff is a natural person allegedly obligated to pay debts asserted to be owed to creditors other than LVNV, Ad Astra, MF and CSII.

57.     Upon information and belief, on a date better known by LVNV, LVNV began to attempt to collect an alleged consumer debt from the Plaintiff.

58.     The alleged debt was said to be owed to Credit One Bank.

59.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purpose.

60.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

61.     The reporting of the alleged debt contains an inaccurate balance.

62. The reporting of the alleged debt contains an inaccurate status.

63. The reporting of the alleged debt contains inaccurate delinquency information.

64. The reporting of the alleged debt contains inaccurate dispute information.

65. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

66. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

67. That LVNV was reporting the collection account on Plaintiff's credit report with Equifax, Experian, and TU.

68. That LVNV was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

69. LVNV's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

70. On or about November 11, 2022, Plaintiff sent dispute letters to Equifax, Experian, and TU notifying the account with LVNV as disputed. **Exhibit D, Exhibit E, and Exhibit F.**

71. These letters provided notice of the inaccurate reporting to Equifax, Experian, and TU.

72. Once Equifax, Experian, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case LVNV.

73. Equifax, Experian, and TU received the letters sent by Plaintiff.

74. Upon information and belief, Equifax, Experian, and TU transmitted notice of these disputes to LVNV via an Automated Credit Dispute Verification form ("ACDV").

75. LVNV was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

76. Alternatively, Equifax, Experian, and TU failed to send notice of the disputes to LVNV after receiving notice of the disputes from Plaintiff.

77.     After receiving this notice, in any subsequent voluntary reporting, LVNV must then include the dispute notation on said account.

78.     On or about January 12, 2023, Plaintiff received an updated credit file from Equifax. **Exhibit H.**

79.     That the credit report was updated on January 1, 2023 by LVNV.

80.     That the updated January 12, 2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Equifax, and transmitted to LVNV.

81.     Alternatively, that the updated January 12, 2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Equifax after Equifax failed to notify LVNV.

82.     On or about January 12, 2023, Plaintiff received an updated credit file from Experian. **Exhibit H.**

83.     That the credit report was updated on January 4, 2023 by LVNV.

84.     That the updated January 12, 2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Experian, and transmitted to LVNV.

85.     Alternatively, that the updated January 12, 2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Experian after Experian failed to notify LVNV.

86.     LVNV failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

87.     LVNV must have voluntarily updated the Plaintiff's alleged account by communicating with Equifax and Experian.

88.    That LVNV furnished information to Equifax and Experian regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by Equifax and Experian of the disputes.

89.    That LVNV failed to update the account information and mark the account as disputed on the updated January 12, 2023 credit report after Plaintiff disputed the account on November 11, 2022 and was given notice of such by Equifax, Experian, and TU.

90.    In the alternative, if LVNV properly updated the account information and marked the account as disputed with Equifax and Experian after receiving notification of disputes from Plaintiff, then Equifax and Experian failed to update the account information and mark the account as disputed on the updated January 12, 2023 credit report.

91.    Upon information and belief, that LVNV never properly updated the account information or marked the account as disputed even after receiving information of the disputes from Equifax and Experian.

92.    Alternatively, Equifax and Experian never updated the account information and marked the account as disputed even after receiving information of the dispute remark from LVNV in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

93.    Upon information and belief, on a date better known by Ad Astra, Ad Astra began to attempt to collect an alleged consumer debt from the Plaintiff.

94.    The alleged debt was said to be owed to SpeedyCash.com.

95.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purpose.

96.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

97.    The reporting of the alleged debt contains an inaccurate balance.

98.    The reporting of the alleged debt contains an inaccurate status.

99.    The reporting of the alleged debt contains inaccurate delinquency information.

100.    The reporting of the alleged debt contains inaccurate dispute information.

101.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

102.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

103.    That Ad Astra was reporting the collection account on Plaintiff's credit report with Equifax, Experian, and TU.

104.    That Ad Astra was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

105.    Ad Astra's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

106.    On or about August 1, 2022, Plaintiff sent a dispute letter to Experian, Equifax, and TU notifying the account with Ad Astra as disputed. **Exhibit C.**

107.    This letter provided notice of the inaccurate reporting to Experian, Equifax, and TU.

108.    Once Experian, Equifax, and TU received notice of this letter, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case Ad Astra.

109.    Experian, Equifax, and TU received the letter sent by Plaintiff.

110.    Upon information and belief, Experian, Equifax, and TU transmitted notice of this dispute to Ad Astra via an Automated Credit Dispute Verification form ("ACDV").

111.    Ad Astra was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

112.    Alternatively, Experian, Equifax, and TU failed to send notice of the disputes to Ad Astra after receiving notice of the dispute from Plaintiff.

113.    After receiving this notice, in any subsequent voluntary reporting, Ad Astra must then include the dispute notation on said account.

114.    On or about December 12, 2022, Plaintiff received an updated credit file from TU. **Exhibit H.**

115.    That the credit report was updated December 1, 2022 by TU.

116.    That the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to Ad Astra.

117.    Alternatively, that the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify Ad Astra.

118.    On or about December 12, 2022, Plaintiff received an updated credit file from Equifax. **Exhibit H.**

119.    That the credit report was updated on December 1, 2022 by Ad Astra.

120.    That the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Equifax, and transmitted to LVNV.

121.    Alternatively, that the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Equifax after Equifax failed to notify Ad Astra.

122.    On or about December 12, 2022, Plaintiff received an updated credit file from Experian. **Exhibit H.**

123.    That the credit report was updated on December 1, 2022 by Ad Astra.

124.    That the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Equifax, and transmitted to LVNV.

125.    Alternatively, that the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Equifax after Equifax failed to notify LVNV.

126.    That the updated December 12, 2022 credit report did not contain updated marked as disputed information.

127.    That the updated December 12, 2022 credit report contained inaccurate information.

128.    Ad Astra failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

129.    Ad Astra must have voluntarily updated the Plaintiff's alleged account by communicating with Experian, Equifax, and TU.

130.    That Ad Astra furnished information to Experian, Equifax, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by Experian, Equifax, and TU of the dispute.

131.    That Ad Astra failed to update the account information and mark the account as disputed on the updated December 12, 2022 credit report after Plaintiff disputed the account on August 1, 2022 and was given notice of such by Experian, Equifax, and TU.

132.    In the alternative, if Ad Astra properly updated the account information and marked the account as disputed with Experian, Equifax, and TU after receiving notification of dispute from Plaintiff, then Experian, Equifax, and TU failed to update the account information and mark the account as disputed on the updated December 12, 2022 credit report.

133.    Upon information and belief, that Ad Astra never properly updated the account information or marked the account as disputed even after receiving information of the dispute from Experian, Equifax, and TU.

134.    Alternatively, TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from Ad Astra in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

135.    Upon information and belief, on a date better known by MF, MF began to attempt to collect an alleged consumer debt from the Plaintiff.

136.    The alleged debt was said to be owed to Synchrony Bank.

137.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purpose.

138.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

139.    The reporting of the alleged debt contains an inaccurate balance.

140.    The reporting of the alleged debt contains an inaccurate status.

141.    The reporting of the alleged debt contains inaccurate delinquency information.

142.    The reporting of the alleged debt contains inaccurate dispute information.

143.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

144.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

145.    That MF was reporting the collection account on Plaintiff's credit report with Equifax, Experian, and TU.

146.    That MF was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

147.    MF's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

148.    On or about August 1, 2022, Plaintiff sent dispute letters to Experian, Equifax and TU notifying the account with MF as disputed. **Exhibit A, Exhibit B, Exhibit C.**

149.    This letter provided notice of the inaccurate reporting to Experian, Equifax and TU.

150.    Once Experian, Equifax and TU received notice of this letter, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case MF.

151.    Experian, Equifax and TU received the letter sent by Plaintiff.

152.    Upon information and belief, Experian, Equifax and TU transmitted notice of this dispute to MF via an Automated Credit Dispute Verification form ("ACDV").

153.    MF was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

154.    Alternatively, Experian, Equifax and TU failed to send notice of the disputes to MF after receiving notice of the dispute from Plaintiff.

155.    After receiving this notice, in any subsequent voluntary reporting, MF must then include the dispute notation on said account.

156.    On or about December 12, 2022, Plaintiff received an updated credit file from TU. **Exhibit G.**

157.    That the credit report was updated on November 29, 2022 by TU.

158.    That the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to MF.

159.    Alternatively, that the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify MF.

160.    On or about December 12, 2022, Plaintiff received an updated credit file from Experian. **Exhibit G.**

161.    That the credit report was updated on November 29, 2022 by Experian.

162.    That the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Experian, and transmitted to MF.

163.    Alternatively, that the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Experian after Experian failed to notify MF.

164.    On or about December 12, 2022, Plaintiff received an updated credit file from Equifax. **Exhibit G.**

165.    That the credit report was updated on November 1, 2022 by TU.

166.    That the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Equifax, and transmitted to MF.

167.    Alternatively, that the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after Equifax failed to notify MF.

168.    That the updated December 12, 2022 credit report did not contain updated marked as disputed information.

169.    That the updated December 12, 2022 credit report contained inaccurate information.

170.    MF failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

171.    MF must have voluntarily updated the Plaintiff's alleged account by communicating with Equifax, Experian and TU.

172.    That MF furnished information to Equifax, Experian, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by Experian, Equifax, and TU of the dispute.

173.    That MF failed to update the account information and mark the account as disputed on the updated December 12, 2022 credit report after Plaintiff disputed the account on August 1, 2022 and was given notice of such by TU.

174.    In the alternative, if MF properly updated the account information and marked the account as disputed with Experian, Equifax, and TU after receiving notification of dispute from Plaintiff, then Equifax, Experian and TU failed to update the account information and mark the account as disputed on the updated December 12, 2022 credit report.

175.    Upon information and belief, that MF never properly updated the account information or marked the account as disputed even after receiving information of the dispute from Experian, Equifax, and TU.

176.    Alternatively, Equifax, Experian, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from MF in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

177.    Upon information and belief, on a date better known by CSII, CSII began to attempt to collect an alleged consumer debt from the Plaintiff.

178.    The alleged debt was said to be owed to ProPath Services, LLC.

179.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purpose.

180.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

181.    The reporting of the alleged debt contains an inaccurate balance.

182.    The reporting of the alleged debt contains an inaccurate status.

183.    The reporting of the alleged debt contains inaccurate delinquency information.

184.    The reporting of the alleged debt contains inaccurate dispute information.

185.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

186.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

187.    That CSII was reporting the collection account on Plaintiff's credit report with Equifax and Experian.

188.    That CSII was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

189.    CSII's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

190.    On or about August 1, 2022, Plaintiff sent dispute letters to Experian and Equifax notifying the account with MF as disputed. **Exhibit A, Exhibit B.**

191.    This letter provided notice of the inaccurate reporting to Experian and Equifax.

192.    Once Experian and Equifax received notice of this letter, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CSII.

193.    Experian and Equifax received the letter sent by Plaintiff.

194.    Upon information and belief, Experian and Equifax transmitted notice of this dispute to MF via an Automated Credit Dispute Verification form ("ACDV").

195.    CSII was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

196.    Alternatively, Experian and Equifax failed to send notice of the disputes to MF after receiving notice of the dispute from Plaintiff.

197.    After receiving this notice, in any subsequent voluntary reporting, CSII must then include the dispute notation on said account.

198.    On or about December 12, 2022, Plaintiff received an updated credit file from Experian. **Exhibit G.**

199.    That the credit report was updated on December 9, 2022 by Experian.

200.    That the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Experian, and transmitted to CSII.

201.    Alternatively, that the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Experian after Experian failed to notify CSII.

202.    On or about December 12, 2022, Plaintiff received an updated credit file from Equifax. **Exhibit G.**

203.    That the credit report was updated on November 1, 2022 by Equifax.

204.    That the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Equifax, and transmitted to CSII.

205.    Alternatively, that the updated December 12, 2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Equifax after Equifax failed to notify CSII.

206.    That the updated December 12, 2022 credit report did not contain updated marked as disputed information.

207.    That the updated December 12, 2022 credit report contained inaccurate information.

208.    CSII failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

209.    CSII must have voluntarily updated the Plaintiff's alleged account by communicating with Experian and Equifax.

210.    That CSII furnished information to Experian and Equifax regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by Experian and Equifax of the dispute.

211.    That CSII failed to update the account information and mark the account as disputed on the updated December 12, 2022 credit report after Plaintiff disputed the account on August 1, 2022 and was given notice of such by Experian and Equifax.

212.    In the alternative, if CSII properly updated the account information and marked the account as disputed with Experian and Equifax after receiving notification of dispute from Plaintiff, then Experian and Equifax failed to update the account information and mark the account as disputed on the updated December 12, 2022 credit report.

213.    Upon information and belief, that CSII never properly updated the account information or marked the account as disputed even after receiving information of the dispute from Experian and Equifax.

214.    Alternatively, Experian and Equifax never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CSII in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

215.    All of LVNV, Ad Astra, MF, and CSII's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

216.    All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

217.    Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of LVNV, Ad Astra, MF, and CSII's and/or Equifax, Experian, and TU.

218.    Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by LVNV, Ad Astra, MF, CSII and/or Equifax, Experian, and TU.

219.    Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by LVNV, Ad Astra, MF, CSII and/or Equifax, Experian, and TU.

220.    Plaintiff has suffered actual harm based on her costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

221.    Plaintiff's injury-in-fact is fairly traceable to the challenged representations of LVNV, Ad Astra, MF, CSII, and/or Equifax, Experian, and TU.

222.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions**

223.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

224.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

225.    That because Plaintiff disputed the debt, Ad Astra, MF and CSII when choosing to contact the consumer reporting agencies, were obligated to inform them of the disputed status of the accounts. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed

summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

226.    Ad Astra, MF and CSII used deceptive and misleading tactics when they communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debts were disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

227.    Ad Astra, MF and CSII's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 495 (5th Cir. 2004); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, Goswami, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

228.    Ad Astra, MF and CSII violated the Plaintiff's right not to be the target of misleading debt collection communications.

229.    Ad Astra, MF and CSII violated the Plaintiff's right to a truthful and fair debt collection process.

230.    Ad Astra, MF and CSII's communications with Plaintiff were deceptive and misleading.

231.    Ad Astra, MF and CSII used unfair and unconscionable means to attempt to collect the alleged debts.

232.    Ad Astra, MF and CSII's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Ad Astra, MF and CSII's collection efforts.

233.    Ad Astra, MF and CSII's failure to mark a debt as disputed they knew or should have known was disputed violates § 1692e, 1692e(8) of the FDCPA.

234.    Ad Astra, MF and CSII's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding her situation.

235.    Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

236.    Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of Ad Astra, MF, and CSII's conduct.

237.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide

information that helps consumers to choose intelligently. Ad Astra, MF and CSII's false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

238.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment.

239.    Defendant Ad Astra, MF and CSII's violation of § 1692e of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Kiasi Bates, prays that this Court:

A.    Declare that Ad Astra, MF and CSII's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Kiasi Bates, and against Ad Astra, MF and CSII, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse

240.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

241.    Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

242.    Ad Astra, MF and CSII's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

243.    Ad Astra, MF and CSII attempted to coerce Plaintiff into paying alleged debts she otherwise would not have paid by submitting false and inaccurate information to her credit report.

244.    Ad Astra, MF and CSII could have no other purpose in doing this except to harm Plaintiff's reputation and deprive her of her ability to receive any type of credit line unless he paid the alleged debts.

245.    Defendant Ad Astra, MF and CSII's violation of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Kiasi Bates, prays that this Court:

A.    Declare that Ad Astra, MF and CSII's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Kiasi Bates, and against Ad Astra, MF and CSII for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices

246.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

247.    Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

248.    Ad Astra, MF and CSII attempted to collect debts by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

249.    Ad Astra, MF and CSII used unfair and unconscionable means to attempt to collect the alleged debts.

250.    Ad Astra, MF and CSII's violation of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Kiasi Bates, prays that this Court:

    A.    Declare that Ad Astra, MF and CSII's debt collection actions violate the FDCPA;

    B.    Enter judgment in favor of Plaintiff Kiasi Bates, and against Ad Astra, MF and CSII for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

    C.    Grant other such further relief as deemed just and proper.

**Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information**

251.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

252.    Equifax, Experian, and TU violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they published and maintain concerning the Plaintiff.

253.    As a result of this conduct, action and inaction of Equifax, Experian, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

254.    Equifax, Experian, and TU's conduct, action, and inaction were willful, rendering them liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

255.    The Plaintiff is entitled to recovery costs and attorney's fees from Equifax, Experian, and TU in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Kiasi Bates, prays that this Court:

A.    Declare that Equifax, Experian, and TU's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Kiasi Bates, and against Equifax, Experian, and TU, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Kiasi Bates, and against Equifax, Experian, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.    Grant other such further relief as deemed just and proper.

## Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

256.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

257.    Defendant Equifax, Experian, and TU violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Ad Astra, MF and CSII; by failing to maintain reasonable procedures with which to filter and verify disputed information in the plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

258.     As a result of this conduct, action and inaction of Equifax, Experian, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

259.     Equifax, Experian, and TU's conduct, action and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

260.     The Plaintiff is entitled to recovery costs and attorney's fees from Equifax, Experian, and TU in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Kiasi Bates prays that this Court:

A.     Declare that Equifax, Experian, and TU's credit reporting actions violate the FCRA;

B.     Enter judgment in favor of Plaintiff Kiasi Bates, and against Equifax, Experian, and TU, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.     Or, in the alternative, enter judgment in favor of Plaintiff Kiasi Bates, and against Equifax, Experian, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.     Grant other such further relief as deemed just and proper.

## Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

261.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

262.    Defendant Equifax, Experian, and TU violated 15 U.S.C. § 1681s-2(b) by continuing to report the Ad Astra, MF and CSII representations within Plaintiff's credit file with Equifax, Experian, and TU  without also including a notation that the debts were disputed; by failing to fully and properly investigate the Plaintiff's dispute of the Ad Astra, MF and CSII representations; by failing to review all relevant information regarding same; by failing to accurately respond to Ad Astra, MF and CSII; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Ad Astra, MF and CSII representations to the consumer reporting agencies.

263.    As a result of this conduct, action and inaction of Ad Astra, MF and CSII, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

264.    Defendants Ad Astra, MF and CSII's conduct, action and inaction were willful, rendering them liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

265.    Plaintiff is entitled to recover costs and attorney's fees from Ad Astra, MF and CSII in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Kiasi Bates, prays that this Court:

A.    Declare that Ad Astra, MF and CSII's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Kiasi Bates, and against Ad Astra, MF and CSII for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Kiasi Bates, and against Ad Astra, MF and CSII for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.    Grant other such further relief as deemed just and proper.

## **JURY DEMAND**

266.    Plaintiff demands a trial by jury on all Counts so triable.

Dated: December 1, 2023

Respectfully Submitted,

**HALVORSEN KLOTE**

By:    /s/ Joel S. Halvorsen

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com